UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SHIRLEY L. PHELPS-ROPER, | ) | CASE NO. 1: 06 CV 2038 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | |
| | ) | |
| BOB TAFT, in his Official Capacity as the | ) | MEMORANDUM OPINION |
| Governor of the State of Ohio, et al., | ) | AND ORDER |
| | ) | |
| Defendants. | ) | |

This matter comes before the Court upon cross-motions for summary judgment. In particular, currently pending before the Court is a Motion for Summary Judgment filed by Defendants Ohio Governor Bob Taft and Attorney General Jim Petro (collectively the "State Defendants")[1] (ECF # 18), a Motion for Summary Judgment filed by Defendant Cuyahoga County Prosecutor William D. Mason (ECF # 19) and a cross-Motion for Summary Judgment filed by Plaintiff Shirley Phelps-Roper (ECF # 20).

I. BACKGROUND

In the instant case, Plaintiff filed a two-count Complaint against the State Defendants and Defendant Mason, seeking declaratory and injunctive relief. (ECF # 1.) Plaintiff states that, as a member of the Westboro Baptist Church ("WBC"), she has certain religious beliefs that she wishes to express by protesting and engaging in "other protest activities" within 300-feet of funeral services, burial

---

[1] Also pending before the Court is a Motion to Substitute Defendant Office Holders. (ECF # 31.) In that Motion, the State Defendants give notice that the present holders of the offices of Governor and Attorney General of Ohio are Ted Strickland and Marc Dann respectively. Accordingly, the State Defendants move the Court to substitute Ted Strickland and Marc Dann for the former office-holders Bob Taft and Jim Petro in this case. (*Id.*) Plaintiff has not filed any opposition to the Motion. For good shown, the Court hereby GRANTS the Motion to Substitute.

services, and funeral processions. (*Id.* at ¶ 2.) Plaintiff alleges that she has protested at funerals in the past, in various states, and wishes to do so in Ohio and other states in the future. (*Id.*) Plaintiff describes her beliefs and protest activities as follows:

> [C]hurch members, including Plaintiff, believe that homosexuality is a sin and abomination. They further believe that God is punishing America for the sin of homosexuality by killing Americans, including soldiers. Because God is omnipotent to cause or prevent tragedy, they believe that when tragedy strikes it is indicative of God's wrath.
>
> Plaintiff, along with other church members of WBC, has picketed at funerals of American soldiers killed in Afghanistan and Iraq, in the sincere belief that protesting at funerals is an effective way to convey the message of the Westboro Baptist Church.

(*Id.* at ¶¶ 12-13.) Plaintiff argues, however, that her right to protest at future funerals will be effectively prevented or substantially hindered by an Ohio statute, namely Ohio Revised Code Section 3767.30. (*Id.* at ¶ 2.)

> The statute, entitled "Picketing or protesting during funeral or burial services," provides:
>
> Every citizen may freely speak, write, and publish the person's sentiments on all subjects, being responsible for the abuse of the right, but no person shall picket or engage in other protest activities, nor shall any association or corporation cause picketing or other protest activities to occur, within three hundred feet of any residence, cemetery, funeral home, church, synagogue, or other establishment during or within one hour before or one hour after the conducting of an actual funeral or burial service at that place. No person shall picket or engage in other protest activities, nor shall any association or corporation cause picketing or other protest activities to occur, within three hundred feet of any funeral procession.

R.C. § 3767.30. The statute defines "other protest activities" as " any action that is disruptive or undertaken to disrupt or disturb a funeral or burial service or a funeral procession." *Id.*

In Count I of the Complaint, Plaintiff claims that R.C. § 3767.30 is an unconstitutional prior restraint on speech. (*Id.* at ¶ 18.) Plaintiff alleges that the statute's provisions are facially content-

2

neutral, yet overbroad in their time, place, and manner regulations of speech because they are not narrowly tailored to serve a significant government interest and do not leave open alternative channels for communication. (*Id.*) To that end, Plaintiff asserts that R.C. § 3767.30 abridges her freedom of speech in violation of the First and Fourteenth Amendments to the United States Constitution. (*Id.* at ¶ 19.)

In Count II of the Complaint, Plaintiff contends that R.C. § 3767.30 is "an overbroad criminalization of speech, in that it imposes an unreasonable time restriction on speech, i.e. one hour before, during, and after a funeral or burial service." (*Id.* at ¶ 21.) Plaintiff further asserts that the statute is overbroad "in that it imposes unreasonable space restrictions on speech, i.e., within 300 feet of a funeral service or burial service, or funeral procession." (*Id.* at ¶ 22.) In this way, Plaintiff asserts that R.C. § 3767.30 chills her freedom of speech in violation of the First and Fourteenth Amendments to the United States Constitution. (*Id.* at ¶ 23.)

Based upon Counts I and II, Plaintiff requests, *inter alia*, that the Court make a declaration that R.C. § 3767.30 is unconstitutional, and issue preliminary and permanent injunctions enjoining Defendants, their employees, agents, successors, and all other acting in concert or participation with them, from enforcing the statute. (*Id.* at 6.) Plaintiff also seeks an award of costs, including attorney fees. (*Id.*)

In conjunction with the Complaint, Plaintiff filed a Motion for a Preliminary Injunction. (ECF # 2.) Although Defendants filed Memoranda in Opposition to the Motion (ECF # 5, ECF # 7) and Plaintiff has filed a Reply Brief in support of the Motion (ECF # 10), the parties subsequently agreed that the issues raised by the Motion could be resolved on cross-motions for summary judgment (ECF #

13). Hence, currently before the Court is the Motion for Summary Judgment filed by the State Defendants (ECF # 18), a Motion for Summary Judgment filed by Defendant Mason (ECF # 19), and a cross-Motion for Summary Judgment filed by Plaintiff (ECF # 20). The Motions have been briefed fully and are now ripe for disposition.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing FED. R. CIV. P. 56(c)). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. The court will view the summary judgment motion in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Accordingly, "[t]he mere existence of a scintilla of

evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 252). Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citations omitted). In most civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id*. at 252. However, if the non-moving party faces a heightened burden of proof, such as clear and convincing evidence, it must show that it can produce evidence which, if believed, will meet the higher standard. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmover. The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995). FED. R. CIV. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

The Federal Rules identify the penalty for the lack of such a response by the nonmoving party as an automatic grant of summary judgment, where otherwise appropriate. *Id.*

Though parties must produce evidence in support of and in opposition to a motion for summary judgment, not all types of evidence are permissible. The Sixth Circuit has concurred with the Ninth

Circuit that "'it is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment.'" *Wiley v. United States*, 20 F.3d 222, 225-26 (6th Cir. 1994) (quoting *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988)).  FED. R. CIV. P. 56(e) also has certain, more specific requirements:

> [Rule 56(e)] requires that affidavits used for summary judgment purposes be made on the basis of personal knowledge, set forth admissible evidence, and show that the affiant is competent to testify.  Rule 56(e) further requires the party to attach sworn or certified copies to all documents referred to in the affidavit.  Furthermore, hearsay evidence cannot be considered on a motion for summary judgment.

*Wiley*, 20 F.3d at 225-26 (citations omitted).  However, evidence not meeting this standard may be considered by the district court unless the opposing party affirmatively raises the issue of the defect.

> If a party fails to object before the district court to the affidavits or evidentiary materials submitted by the other party in support of its position on summary judgment, any objections to the district court's consideration of such materials are deemed to have been waived, and [the Sixth Circuit] will review such objections only to avoid a gross miscarriage of justice.

*Id*. at 226 (citations omitted).

As a general matter, the district judge considering a motion for summary judgment is to examine "[o]nly disputes over facts that might affect the outcome of the suit under governing law."  *Anderson*, 477 U.S. at 248.  The court will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter.  *Id.* at 249.  The judge's sole function is to determine whether there is a genuine factual issue for trial; this does not exist unless "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  *Id.*

In sum, proper summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly

6

can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. It is with this standard in mind that the instant Motions must be decided.

### III. DISCUSSION

The parties agree that the government may impose reasonable restrictions on the time, place, or manner of protected speech, provided that the restrictions are content neutral, are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information. *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). In this case, there is likewise no dispute that the statute at issue satisfies the requirement that time, place, or manner regulations be content neutral. (*See* ECF # 18 at 9, ECF # 19 at 5, ECF # 20 at 3.) Accordingly, in order to resolve the pending Motions, the Court need only determine whether the statute is narrowly tailored to serve a significant governmental interest, and whether it leaves open ample alternative channels for communication. *See Ward*, 491 at 791.

The first issue before the Court is whether the State of Ohio has a significant interest in protecting its citizens from disruption during the events associated with a funeral or burial service. The Supreme Court has held that, in certain settings, a state has an interest in protecting its citizens from unwanted communications. *See, e.g., Frisby v. Schultz*, 487 U.S. 474, 484 (1988) (finding that the government had a significant interest in protecting residential privacy). Although a state cannot protect its citizens from communications solely on the ground that the citizens may find the communications at issue to be offensive, "a state may protect citizens from unwelcome communications – including offensive communications – where the communications invade substantial privacy interests in an

7

essentially intolerable manner, as where the communications are directed at citizens in their homes or where the communications are directed at a 'captive' audience and are so obtrusive that individuals cannot avoid exposure to them." *McQueary v. Stumbo*, 453 F. Supp. 2d 975, 990 (2006). Accordingly, the analysis of whether a significant governmental interest exists depends upon whether the communication at issue is so intrusive that an unwilling audience cannot avoid it, *see Frisby*, 487 U.S. at 474, or whether, for example, the audience can avoid "bombardment of their sensibilities simply by averting their eyes," *Cohen v. California*, 403 U.S. 15, 21 (1971).

In this case, Plaintiff argues that mourners are not a captive audience, powerless to avoid the message of the WBC. (ECF # 24 at 5-6.) To the contrary, Plaintiff asserts that mourners make the choice to voluntarily attend funeral services, and they can "avert their eyes" to avoid any unwanted communication. (*Id.* at 6.) This Court disagrees and, as set forth below, finds that the State of Ohio has an interest in protecting mourners, a captive audience, from unwanted speech.

The Supreme Court has recognized that "[f]amily members have personal stake in honoring and mourning their dead and objecting to unwarranted public exploitation that, by intruding upon their own grief, tends to degrade the rites and respect they seek to accord the deceased person who was once their own." *National Archives and Records Admin. v. Favish*, 541 U.S. 157, 168 (2003). This personal stake in honoring and mourning the dead was recognized recently by a court that observed:

> A funeral is a deeply personal, emotional and solemn occasion. Its attendees have an interest in avoiding unwanted, obtrusive communications which is at least similar to a person's interest in avoiding such communications inside his home. Further, like medical patients entering a medical facility, funeral attendees are captive. If they want to take part in an event memorializing the deceased, they must go to the place designated for the memorial event.

*McQueary*, 453 F. Supp. 2d at 992.  Because the mourners are a captive audience unable to avoid communications simply by averting their eyes, the Court finds that the State of Ohio has a significant interest in protecting its citizens from disruption during the events associated with a funeral or burial service.  *See Phelps-Roper v. Nixon*, No. 06-4156-CV-C-FJG, 2007 WL 273437, at *3 (W.D. Mo. Jan. 26, 2007).  Hence, to the extent that Plaintiff moves for Summary Judgment on the ground that no significant governmental interest exists, (ECF # 20 at 4-5), the Court finds Plaintiff's Motion to be without merit.

Having found that the statute serves a significant government interest, the Court now examines whether it is narrowly tailored to serve that interest and leaves open ample alternative channels for communication.  *See Ward*, 491 U.S. at 791.  Although the statute must not burden substantially more speech than is necessary to further the government's legitimate interests, it need not be the least restrictive or least intrusive means of doing so in order to be narrowly tailored.  *See id.* at 798-99.  Stated differently, "the requirement of narrow tailoring is satisfied 'so long as the . . . regulation promotes a substantial government interest that would be achieved less effectively absent the regulation.'"  *Id.* at 799 (*quoting United States v. Albertini*, 472 U.S. 675, 689 (1985)).  With respect to any alleged overbreadth, the scope of the statute does not render it unconstitutional unless the overbreadth is not only real, but substantial, when viewed in relation to the statute's legitimate sweep.  *See Osborne v. Ohio*, 495 U.S. 103, 112 (1990).  As such, "the mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge."  *City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 800 (1984).

In this case, the statute creates what has been referred to in this litigation as a fixed buffer zone and a floating buffer zone. The fixed buffer zone refers to the statute's restriction on picketing or engaging in other protest activities "within three hundred feet of any residence, cemetery, funeral home, church, synagogue, or other establishment during or within one hour before or one hour after the conducting of an actual funeral or burial service at that place." R.C. § 3767.30. The floating buffer zone refers to the statute's prohibition on picketing or engaging in other protest activities "within three hundred feet of any funeral procession." *Id.* The Court shall examine the fixed and floating buffer zones separately.

As to the fixed buffer zone, the Court finds that the statute is not substantially broader than necessary to achieve the State of Ohio's legitimate interest in protecting its citizens from unwanted communications while they attend a funeral or burial service. Plaintiff fails to demonstrate that the statute's purported overbreadth is either real or substantial. Further, the fact that Plaintiff can conceive of some potentially impermissible applications is not enough to render it unconstitutional. In addition, as written, the statute provides Plaintiff with alternative channels of communication through which she can deliver her message. That is, Plaintiff is free to express her message outside of the times and places set forth in the statute, and the statute does not create a barrier to Plaintiff's use of other means to deliver her message to the public. *See Phelps-Roper v. Nixon*, 2007 WL 273437, at *4. Based upon the foregoing, the Court finds that, as it relates to the fixed buffer zone, the statute satisfies the requirement of narrow tailoring.

With respect to the floating buffer zone around the funeral procession, however, the Court reaches a different conclusion. The Court finds that the language of the statute applicable to floating

buffer zones is not narrowly tailored, in that it burdens substantially more speech than necessary to serve the State of Ohio's interest protecting its citizens from disruption during the events associated with a funeral or burial service.  In other words, because the buffer zone "floats," the overbreadth is not only real, but substantial, when viewed in relation to the statute's legitimate sweep.  Because the portion of the statute relating to the floating buffer zone is unconstitutionally overbroad, it fails to satisfy the requirement of narrowly tailoring.

Although the statute at issue does not contain a severability clause, Ohio Revised Code Section 1.50 provides that:

> If any provision of a section of the Revised Code or the application thereof to any person or circumstance is held invalid, the invalidity does not affect other provisions or applications of the section or related sections which can be given effect without the invalid provision or application, and to this end the provisions are severable.

R.C. § 1.50.  Accordingly, R.C. § 1.50 "allows for severance as long as the remainder of the statute can still be given legal effect."  *See Papa Nick's Specialties, Inc. v. Harrod*, 747 F. Supp. 1240, 1242 (N. D. Ohio 1990).  This Court therefore severs the portion of R.C. § 3767.30 that states, "No person shall picket or engage in other protest activities, nor shall any association or corporation cause picketing or other protest activities to occur, within three hundred feet of any funeral procession," as well as the reference to the funeral procession in the statute's definition of "other protest activities."  The remainder of the statute shall stand.  Further, the Court finds that, to the extent that Plaintiff has requested injunctive relief, such relief is not necessary and is therefore denied.

## IV. CONCLUSION

In this case, this Court has been charged with evaluating the constitutionality of R.C. § 3767.30,

11

a state statute that relates to funeral or burial services, events that serve an important place in our history and culture. As set forth above, the statute places restrictions on communications surrounding these events by the use of fixed and floating buffer zones. With respect to the fixed buffer zone, the Court makes its finding based upon its determination that the statute is not substantially broader than necessary to achieve the State of Ohio's legitimate interest in protecting its citizens from unwanted communications while they attend a funeral or burial service. Paying one's last respects to the deceased during a funeral or burial service is an important and sacred tradition deeply entrenched in the history of not only the State of Ohio, but the nation, and the world. As to the fixed buffer zone, the statute at issue gives such occasions the deference they deserve, while making any interference with speech minimal. Hence, the statute, which merely upholds the tradition long-held in American culture, simply prevents disruption at a funeral or burial service, and leaves open ample alternative channels of communication for individuals seeking to express their point of view. With respect to the floating buffer zone, however, although the State of Ohio's interest is undoubtedly significant, the Court finds that portion of the statute to burden substantially more speech than necessary.

Based upon the foregoing, each of the pending Motions for Summary Judgment, namely the Motion for Summary Judgment filed by the State Defendants (ECF # 18), the Motion for Summary Judgment filed by Defendant Mason (ECF # 19), and the cross-Motion for Summary Judgment filed by Plaintiff (ECF # 20), is GRANTED IN PART and DENIED IN PART. More specifically, the Court finds the portion of R.C. § 3767.30 relating to the fixed buffer zone to be constitutional, but strikes the portion of the statute relating to the floating buffer zone as unconstitutional. The language in R.C. § 3767.30 that states, "No person shall picket or engage in other protest activities, nor shall any

12

association or corporation cause picketing or other protest activities to occur, within three hundred feet of any funeral procession" in addition to the reference to the funeral procession in the statute's definition of "other protest activities" shall be severed from the statute, but the balance of the statute shall remain valid and legally operative. There being no remaining issues in this case, this matter is hereby TERMINATED.

      IT IS SO ORDERED.

                                                 *s/ Donald C. Nugent*
                                               DONALD C. NUGENT
                                               United States District Judge

DATED: March 23, 2007